## BUSSEY *vs.* LEAVITT.

The *statute* of 1831, *ch.* 501, *sec.* 2, by which the requirements before then existing, in regard to the evidence to be adduced by a purchaser in support of a title derived under a collector's sale of non-resident proprietors' lands, for taxes, are much relaxed, was held to operate upon sales made subsequently to the passage of the law, though the taxes were assessed before.

The provision in the *stat.* of 1826, *ch.* 377, *sec.* 8, that the notice of the sale of such lands " to be published in the public newspapers three weeks successively, shall be published three months prior to the time of such sale,'' was construed to mean, that the three weeks should be completed three months prior to the sale, and not that the publication should be three successive months.

But where the law required such publication to be in the newspaper of the public printer to the State, and before the last publication, such paper had ceased to be the state paper, the notice was held to be insufficient.

THIS was a writ of entry, to recover possession of several lots of land in the town of *Newburgh,* in this county, and was resisted by the tenant under a title derived from a sale by the collector of taxes in that town, the plaintiff being a non-resident proprietor.

The tax was assessed in the year 1830, and the sale was in *April,* 1831. And one question in the case was, whether the statute passed *March* 12, 1831, in relation to the evidence to be

adduced in support of a title derived under a collector's sale for the nonpayment of taxes, applied to this case.

Prior to the sale there was a publication of notice three weeks successively, the last being three months prior to the sale. But before the last publication in the paper published by the printer to the State, such paper *ceased to be the State paper*.

It was agreed by the parties, that if in the opinion of the whole Court, the proof offered by the tenant shew a sufficient defence, the demandant was to become nonsuit, otherwise the cause was to stand for trial.

*Rogers* and *T. P. Chandler*, for the plaintiffs, argued against the constitutionality of the law of 1831, if it was intended to apply to sales made by collectors for the nonpayment of taxes, assessed prior to the passage of the law, and cited *Foster & al.* v. *The Essex Bank*, 16 *Mass.* 245 ; *Brunswick* v. *Litchfield*, 2 *Greenl.* 28 ; *Hampshire* v. *Franklin*, 16 *Mass.* 76 ; *Medford* v. *Learned*, 16 *Mass.* 215 ; *Proprs. of Ken. Purchase* v. *Laborce.* 2 *Greenl.* 275 ; *Ligonia* v. *Buxton*, 2 *Greenl.* 102.

2. Legal notice of the sale was not given. The publication was of three weeks only, when by the statute of 1826, *ch.* 337, *sec.* 8, it should have been three months.

3. The doings of the collector should have been returned to the town treasurer, and by him recorded, which was not done. This is not merely directory in the statute, but indispensible. Without it the sale is void. The debtor could not otherwise know who was the purchaser, at what time the sale was made, and for how much.

*Godfrey*, for the defendant.

WESTON C. J. — By the *statute* of 1831, *ch.* 501, *sec.* 2, the law of evidence, before applied to the sale of the lands of nonresident proprietors, for the nonpayment of taxes, was changed. Prior to that time, great strictness of proof, in relation to the preliminary proceedings, had been required of purchasers, to which they were generally strangers, and over which they had no control. It was competent for the legislature, by a general law, to prescribe that, so far as the transfer of the land was in question, proof of the due execution of the collector's deed, and of certain

other of the previous steps required by law, should to that extent, conclusively justify the inference, that every thing had been done necessary to give the purchaser a title. It is founded upon the confidence reposed by law in officers, who are charged with the performance of public duties. That confidence may be abused, and the officer held answerable, while effect is given to his acts, which on their face are legal and regular.

Thus in the levy of an execution upon real estate, when the title thence derived is called in question, the return of the sheriff, specifying the steps taken by him in pursuance of law, cannot be controverted. They may nevertheless be false, and a party thereby be deprived of his land, in a manner not authorised by statute, but the only remedy afforded by law for redress, is by an action against the sheriff, for a false return.

It may be urged, that money may be voted by a town, at a meeting not legally called, without an article justifying it, or for a purpose not authorised by law. Such a vote would not justify an assessment made in pursuance of it, and the assessors would be holden personally liable. This responsibility would generally be sufficient to keep them within the path of duty ; and where it did not, would afford an adequate remedy to the party injured. Nor would he be under any necessity of losing his land. He has five years, within which to redeem it, holding the authorities of the town, who may have abused their trust, liable to him for an indemnity. There does not appear to us therefore any objection to the plain and obvious terms of the act, which are made to apply to sales thereafter to be made. Nor can we find in the act, or in the policy upon which it is founded, any authority to exclude from its operation lands subsequently sold, upon taxes previously assessed.

But it is contended, that the tenant has failed in the proof required by the act. The *statute* of 1821, *ch.* 116, concerning the assessment and collection of taxes, *sec.* 30, prescribed that the collector should advertise in the public newspapers of the printer to the State, for the time being, three weeks successively, but did not specify how long prior to the sale that should be done. By an additional act of 1826, *ch.* 337, *sec.* 8, it is provided, that the notice of sale, "to be published in the public newspapers three

weeks successively, shall be so published, three months prior to the time of such sale." And it is insisted that weeks are thereby enlarged to months, and that notice should now be published for three successive months. But we understand the provision to mean that the notice, by advertising three weeks successively, shall be completed three months prior to the sale. Upon another ground however we are of opinion, that the law in regard to notice is not proved to have been complied with. The statute of 1831 provides that the party, claiming under a collector's sale, must prove that he complied with the requisitions of the law, in advertising the real estate, he undertook to sell. Evidence of this fact is essential to the purchaser's title. On the 12*th* of *January*, 1831, as appears by the resolve of the legislature of that day, the "Portland Advertiser and Gazette of Maine" ceased to be the public newspaper of the printer to the State. The subsequent publication in that paper, necessary to make out the three successive weeks, was not in pursuance of the statute. If the tenant however has any additional proof upon this point, he is at liberty, as the case is reserved, to offer it at a further trial.