## WILLEMINA PROPER *v.* ANTON J. PROPER.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JANUARY 5, 1903.    DECIDED FEBRUARY 19, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Service by publication in divorce cases, when required by the statute to be made in certain named newspapers, cannot be made in other newspapers.

That is so even though the newspapers named in the statute have ceased to exist at all or at least under such names.

That is so also even though since such cessation of such named news-
papers service by publication has been made in other newspapers
in a number of cases by order of various Circuit Judges covering
a period of several years. The arguments of contemporaneous and
long continued construction and hardship, if otherwise shown by
the facts, do not apply in a case where the statute is explicit and
does not admit of construction.

### OPINION OF THE COURT BY FREAR, C.J.

This is an action for divorce in which service was attempted
to be made by publication. The only exception taken is to the
order of the trial judge dismissing the libel on the ground that
the attempted service was insufficient.

The statute, enacted in 1870 (Civ. L. Sec. 1933), provides
that in cases of divorce when personal service cannot be made,
"an attested copy of the summons shall be printed in the Gov-
ernment Gazette and Ke Au Okoa at least six times," &c. In
the present case the publication was not in either of those pa-
pers but was in the "Evening Bulletin" and the "Ke Aloha
Aina." This is practically all that appears in the record that
is material to the present question. It does not appear why the
publication was not made in the papers named in the statute.
If this were all that we could consider, there would seem to be
no question as to the correctness of the order excepted to.

Service by publication was unknown to the common law. It
exists only by statute and so cannot be made except as permitted
by statute. Such statutes, being in derogation of the common
law, are strictly construed. All courts agree as to this. *Galpin
v. Page*, 18 Wall. 350, 362. Accordingly, when the statute
expressly provides that the publication shall be in certain speci-
fied newspapers, it cannot be made in entirely different ones.
The trial judge cannot make statutory law, much less can he
repeal or amend existing statutes.

It is argued, however, that publicity is the object of the statute
and that that object is effectuated by publication in other news-
papers as well as by those named in the statute. But not only
does it not appear that as wide publicity would be given by pub-
lication in the papers in question as in the papers named by the

Legislature, but, conceding that such would be the case, the judge could not depart from the plain terms of the statute and thereby not only in effect repeal or amend the statute but authorize in the absence of statute what can be authorized only by statute. There are numerous cases in which attempted services by publication have been held void because of departure from the plain terms of the statute, although under circumstances that would seem to indicate that as great publicity would be given as if the statute had been complied with. Further, publicity in the sense of making known to the public generally is not the main purpose of the statute. So far as publicity is the object it is chiefly with a view to reaching the party defendant whose rights may be affected. And yet it is held that the statute must be strictly complied with, on the one hand however probable or even certain it may be that the notice cannot reach such party in time to enable him to respond, if at all, or on the other hand even though he has actual knowledge or personal notice of the proceedings though not in the manner prescribed by law. See *Lishman v. Perry*, 7 Haw. 266; *Vizzard v. Taylor*, 97 Ind. 90; *Otis v. Epperson*, 88 Mo. 131; Wade, Notice, Sec. 1030. Moreover if the statute permits publication in certain papers only, that would tend to lead people to look for such notices in such papers only.

The difficulty in this case, however, arises, not from what appears on the record, but from what it is taken for granted the court knows or is supposed to have judicial knowledge of, to the effect that the papers named in the statute, not many years after the enactment of the statute, not only ceased to be controlled by the Government, if they were so controlled when the statute was enacted, but ceased to exist under the names set forth in the statute, and that it has been the practice during much if not all of the time since for the trial judges to order publication in cases of this kind in other papers. Hence the arguments of contemporaneous and continuous construction and hardship are urged.

We are not aware that any one ever doubted that strict compliance with the statute was necessary so long as the papers

named therein were under the same control and bore the same
names as when the statute was enacted.  Nor do we know how
long after that change occurred it was that a departure from the
statute began to be made.  We believe that for some time at
least the publication continued to be made in papers which there
is some reason to believe were the same papers though published
under different names, viz: the "Hawaiian Gazette" and the
"Kuokoa."  If so, there is much ground for argument that such
service was a sufficient compliance with the statute.  See *Sage
v. Central R. R. Co.*, 99 U. S. 334; *Perkins v. Keller*, 43 Mich.
53; *Wilkerson v. Eilers*, 114 Mo. 245; *Reimer v. Newel*, 47
Minn. 237; *Isaacs v. Shattuck*, 12 Vt. 668.  This is on the
theory that the newspapers designated by the statute continued
to be the same newspapers, just as a person or corporation would
continue to be the same person or corporation, notwithstanding
a change of name.  And yet it was held in *Bussey v. Leavitt,*
12 Me. 378, that the notice was insufficient where the statute
required publication in the newspaper of the public printer to
the state, and such paper namely, the "Portland Advertiser and
Gazette of Maine," had ceased to be the public newspaper of
such printer.  And since the statute of 1892 (Civ. L. Sec. 1153),
as we recently held in *Winslow v. Winslow. ante*, 498, notices
in cases of this kind could be published in any newspaper select-
ed by the party or his attorney, provided they were published
in the appropriate languages and had been shown to and de-
clared by the Supreme Court to be newspapers of general cir-
culation.  But in the present case the papers were neither con-
tinuances under different names of the papers mentioned in the
statute nor such as were selected by the libellant or her attorney
or shown to or declared by the Supreme Court to be of general
circulation.  Just how many divorces have been granted by the
trial courts under circumstances like the present we do not
know.  Counsel in his brief enumerates eleven such cases heard
by four different Circuit Judges during the last four years.  We
presume there were others in previous years.  What the result
will be in respect of such cases—as to property rights, legitimacy
of children, liability to criminal prosecution, &c.—if we do not

uphold the jurisdiction in cases of this kind when there has been no service such as is required by the statute, we cannot say. The Legislature could doubtless by further legislation prevent or cure some of the results, and we can only hope that the others will not prove of great consequence. We should gladly uphold the jurisdiction if we could. But neither of the arguments made, nor any other that occurs to us, would warrant us in doing so. The argument of hardship, while it would be sufficient to cause us to lean one way in a case of doubt, does not authorize us to legislate when there is no doubt. The argument of contemporaneous and long continued construction also, assuming that the departure from the law was contemporaneous and sufficiently long continued, does not apply in cases like the present where the statute is explicit and does not admit of construction. To uphold the jurisdiction in this case would require us to hold in effect—that not only in divorce cases but in all cases in which service by publication may be authorized by a statute, the trial judge may use his discretion and allow service by publication in a manner contrary to the statute, if there is a statute, or in such manner as he pleases, if there is no statute. But that would be contrary both to previous decisions of this court and to the unanimous opinions of other courts. In former years Circuit Judges not infrequently distributed estates on petitions and notices for appointment of administrators, and distributed real estate as well as personal estate on final distribution, but this court has not upheld the exercise of such jurisdiction. *Kailianu v. Lumai*, 8 Haw. 508; *Smith v. Hamakua Mill Co.* 13 Haw. 245. There are some questions so well settled and so fundamental and far reaching in their nature as not to be overturned by the error even of a number of Circuit Judges for a period of years. The case is practically the same now as it would be if the newspapers specified in the statute had not ceased to exist under their former names. If the statute could not be departed from when there were papers that answered the description in the statute, the cessation of those papers could not confer jurisdiction to do so thereafter. To hold otherwise would be not only to go counter to the current of decisions both here and

elsewhere but also to open the way for the perpetration of injustice in future cases by permitting them to be heard and determined without legal notice to interested parties.

The exception is overruled and the order excepted to affirmed.

*T. McCants Stewart* for libellant.

*A. S. Humphreys, amicus curiae.*