## MARY CHARMAN ET AL. *v.* WILLIAM CHARMAN.

SUBMITTED SEPTEMBER 30, 1907.   DECIDED OCTOBER 7, 1907.

HARTWELL, C.J.; WILDER AND BALLOU, JJ.

EQUITY—*quieting title.*

> Equity has not jurisdiction to declare a plaintiff's title and to remove a cloud upon it created by assertion of an adverse claim followed by acts of trespass and annoyance to the plaintiff, where the respective claims depend upon the settlement of a legal controversy under a will.

OPINION OF THE COURT BY HARTWELL, C.J.

The plaintiffs brought a bill to quiet their title in a parcel of land in their possession devised to them by George Charman and which the defendant claimed, "by reason of which said claim said premises have been damaged and the above named plaintiffs have been and are unable to dispose of and lease the said premises to advantage." The prayer is that the defendant be required to set forth the nature of his claim, that the same be determined, that the court adjudge that the plaintiffs are the owners and that the defendant has no right, except as one of the devisees under Charman's will, and that the defendant and those claiming under him "be forever debarred from asserting any claim whatever in and to the said premises adverse to the plaintiffs" and for further relief. The defendant demurred to the jurisdiction and at the same time answered, denying the plaintiffs' ownership and averring that Charman had no title but that the land belonged to one Likeke, whose mortgage on it dated July 22, 1869, assigned to Charman September 13, 1874, was of record, not being fully paid or cancelled; that Charman as mortgagee had collected the rents to liquidate the mortgage debt, and since his decease that his

devisees were collecting them. At a former hearing, no evidence being taken, the judge, upon the pleadings, made a decree for the plaintiffs, which on appeal was reversed, this court saying, "This is a suit brought apparently to remove a cloud, but under the allegations of the amended bill there is no cloud for equity to remove. Irrespective of this, however, the decree cannot be sustained," since the answer denying the plaintiffs' title required them to prove it before being decreed to be the owners, and as the bill averred the defendant's "interest in the land in common with the plaintiffs," it cannot be held from the pleadings that the defendant had no estate in the land. *Charman v. Charman,* 17 Haw. 171. The cause having been remanded, the judge found upon the evidence that Charman died January 5, 1892, his will, dated June 27, 1887, having been admitted to probate February 18, 1892; that at its date and until his death he was lawfully seized and in possession of the land; that he devised to his wife, Mary Charman, for life "the store and land now leased to L. Turner, the store and land now leased to Gonsalves, remainder in fee to Moses Miller," and that the plaintiff Mary Charman is entitled to immediate possession thereof.

After signing an opinion which contains these findings the judge signed a decree for the plaintiffs Mary Charman and Moses Miller, which sets forth the findings above mentioned, and declares that it appeared from the evidence that the defendant had at divers times since about July 2, 1903, asserted a claim of title to the land in his own right upon the ground that the plaintiffs took no title under the will because Charman had never foreclosed the mortgage, and that "the plaintiffs having presented their case herein to a practical conclusion thereof upon the pleadings on file herein, whereupon the defendant by his counsel orally disclaimed the truth of his answer on file, and further renounced any claim of title in fee in himself or in said W. Likeke to any part of the land described in said complaint, and thereupon admitted the title of the plain-

tiffs thereto and that defendant makes no claim whatever to the land in suit other than as a devisee" for life, and that the defendant, "notwithstanding the final disclaimer of the allegations in his answer, made as aforesaid, and not alone asserting a claim of title to said disputed property, has heretofore made said claim the basis of actual and repeated interferences with plaintiffs' enjoyment of said property, and of trespasses on said premises and assault upon the plaintiffs, and their agent." The decree goes on to recite defendant's demands for rent upon the plaintiffs' tenant, a criminal assault upon the premises made by the defendant upon the agent of the plaintiff Mary Charman, his secret collection of rent from tenants and continuing to press his claim of ownership upon them whereby they were intimidated and driven from said premises · from fear of the defendant, and of legal proceedings for rent thereby causing portions of the premises to remain vacant and preventing Mary Charman from leasing to advantage, the decree declaring that the defendant has no right ·in the land other than as a devisee of a life interest of the house and lot by him occupied as a dwelling house, which does not include "any of the store and land leased to L. Turner;" that the plaintiff Mary Charman has a life estate and the plaintiff Miller the remainder in fee in the premises leased to Turner, which are decreed to consist of certain land included in the disputed pieces described in the decree; that the title of Mary Charman and Miller therein is hereby forever settled and quieted in them, according to their several estates therein as aforesaid, as against all claims and demands at law or in equity by the said defendant William Charman, and those claiming or to claim by, through or under him. The decree continues: "And it therefore appearing that the title of the plaintiffs to said property by said will devised to them under clause '5th' thereof, to wit: '5th. The store and land now leased to L. Turner,' should be quieted against the claim of title and right of possession thereto made by the defendant, under his claim under

said will as aforesaid; and further, that until the provisions
of said will with respect to the estate thereby given to the de-
fendant under clause 4th thereof, and with respect to the estate
thereby given to the plaintiffs under clause 5th thereof, shall
be construed and determined, said will constitutes a cloud upon
the title of the plaintiffs to said premises intended to be devised
under said clause 5th, the same being 'the store and land now
leased to L. Turner,' which cloud the plaintiffs are entitled,
under the evidence, to have removed;

"And it further appearing that the claim of said defendant
coupled with his said acts based thereupon, constitutes a cloud
upon the title of said Mary Charman and Moses Miller to said
property, injuriously and vexatiously embarrassing and affect-
ing the same, and it is just and expedient that such likewise
cloud should be removed."

The decree concludes with a perpetual injunction of the
defendant and all claiming under him from claiming any right
in the premises adjudged to constitute the store and land leased
to Turner either under the will or otherwise and from bringing
any suit or action to disturb plaintiffs' possession and title or
otherwise disturbing them in their quiet enjoyment of the
premises.

This was unnecessary verbiage, with repetitions and recitals
of findings and of matters of evidence which are not required
in a decree declaring that the leasehold devised to the plaintiffs
includes the lot in dispute; that the defendant's claim thereto
was unfounded and enjoining him from its assertion.

But the bill cannot be sustained. Equity has no jurisdiction
of the controversy whether the description in the will of the
land devised to the plaintiffs, namely, the Turner leasehold,
or the description of the land devised to the defendant, namely,
the testator's dwelling house and lot, included the lot in ques-
tion. This was a question of law presenting no equitable con-
siderations. An action to quiet title would have settled the
question, and if after judgment in their favor the defendant

had interfered with the plaintiffs' possession unrestrained by actions of trespass a bill for an injunction would lie. In *Fritz v. Grosnicklaus,* 20 Neb. 413, cited in the argument for the bill, the plaintiffs intending to form a partnership with the defendant purchased land with their own money, taking the deed in the name of the intended firm. The partnership was not formed, but the defendant claimed the land as partnership property. Equity alone could furnish relief by declaring the plaintiffs' right, enjoining the defendant and requiring him to release to the plaintiffs.

The present case does not come within the classes of cases enumerated in the statute defining the jurisdiction of equity nor is it a case "where there is not a plain, adequate and complete remedy at law." Sec. 1834, R. L. No case is cited, and we are aware of none, which holds that a claim of ownership followed by acts of trespass and annoyance constitutes a cloud upon title merely because the claim is based on a written instrument. In *Whitehead v. Shattuck,* 138 U. S. 146, 151, the court discusses *Holland v. Challen,* 110 U. S. 15, relied on by the plaintiff, which was a bill brought under a statute of Nebraska to quiet title, alleging that the defendant claimed an interest adverse to the plaintiff which so affected his title as to render a sale or other disposition of his property impossible and disturbed his possession, and praying that the defendant be required to show the nature of her adverse interest that his own title be adjudged valid, and the defendant decreed to have no estate in the premises and enjoined from hindering the plaintiff in his possession. A demurrer to the jurisdiction was sustained. To the defendant's claim that the plaintiff's title had not been adjudicated, and that equity would therefore not remove a cloud upon it, the court said, p. 153, that the statute authorized the proceeding not merely when a bill of peace would lie, "but also to prevent future litigation respecting the property by removing existing causes of controversy as to its title and so embraces cases where a bill quia timet to

remove a cloud upon the title would lie;" and, p. 154, that it "authorized a suit in either of these classes without reference to any previous judicial determination of the validity of the plaintiff's right." But, as pointed out, p. 155, "no word was expressed intimating that suits of the kind could be maintained in the courts of the United States where the plaintiff has a plain, adequate and complete remedy at law and such inference was specially guarded against."

*Holland v. Challen* is further explained in *Scott v. Neely,* 140 U. S. 106, a case under a Kentucky statute similar to that of Nebraska, which, as the court said, merely did away with the necessity of previous adjudications at law in favor of the plaintiff's right, "it being declared sufficient to call into exercise the powers of a court of equity that he was in possession of the land and of the title and was disquieted by an assertion of a claim to the property by the defendant." In *Smyth v. New Orleans Canal Co.,* 141 U. S. 656, a demurrer was sustained to a bill setting forth the plaintiff's title from the state and that the respondents claimed under French grants, praying that he be declared owner and put in possession and have an accounting. "Whether that title can be enforced against other claimants will depend of course upon the validity of the ancient grants produced, and of the proceedings by which Louisiana is alleged to have acquired the property. That can be shown in an action at law as well as in a suit in equity. The facts upon which a title to the premises in controversy rests, or by which such title can be defeated, can be readily shown in an action at law" in which "all the facts can be established and all the questions necessary to determine the right to the property can be considered and disposed of." *Devine v. Los Angeles,* 202 U. S. 313, a bill to remove a cloud upon a title originating with a Spanish grant confirmed by a treaty and patents, averred that the city claimed the Los Angeles river and its waters under usages of Mexico and Spain in vogue prior to the cession of California under the treaty of Guadalupe Hidalgo

and also under acts of the legislature of California; that the claim of the city is based upon a certain construction of the treaty, of an act of congress and certain acts of the California legislature and of city charters adopted in pursuance of an erroneous construction of the treaty and act of congress. The bill averred the defendant's assertion and assumption of the right to control the river and its tributaries, its obstruction of the land owners' ditches, preventing the use of the water to irrigate the plaintiff's lands, resulting in destruction of their values; that these things, together with the claims and threats of the city to sue the complainants, cast a cloud upon their title and largely destroyed the market values of their lands. The bill was dismissed for lack of jurisdiction. The court, after observing that the case was apparently brought under the statute providing that "an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim," said, "We do not understand, however, that a bill will lie to dispel mere verbal assertions of ownership as clouds on title."

Under our former ruling that "under the allegations of the amended bill there is no cloud for equity to remove," the plaintiffs were at liberty to move to amend by averring facts constituting a cloud, but the evidence now shows that under the decisions above cited such amendment could not have been made.

Decree appealed from reversed, bill dismissed.

*L. J. Warren* (*Smith & Lewis* on the brief) for plaintiffs.

*J. Lightfoot* (*Magoon & Lightfoot* on the brief) for defendant.